Naveed Mahboobian (SBN 279464)
Law Offices of Naveed Mahboobian
2530 Wilshire Blvd., Suite 325
Santa Monica, CA 90403
Telephone: (424) 272-1005
naveed@nmlawcorp.com

Attorney for Plaintiff JET-I, Inc.

# UNITED STATED DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JET-I, INC.,

      Plaintiff,

v.

PROFESSIONAL FLIGHT TRANSPORT,
INC. dba WINDSOR JET MANAGEMENT

and

IGNACIO A. MARTINEZ

and

JUAN MOSQUERA

and

ENA ARIAS

and

KAREN BAILANO

and

DOES 1-20
           Defendants.

Case No. :

COMPLAINT FOR DAMAGES FOR:

1. Breach of Contract
2. Intentional Misrepresentation
3. Negligent Misrepresentation
4. Conspiracy
5. Unjust enrichment
6. Unfair competition
7. False Promise
8. Intentional Interference with Prospective Economic Relations
9. Conversion

## COMPLAINT

Plaintiff JET-I, Inc. (hereafter, "JET-I") complains and alleges as follows:

## INTRODUCTION

1. This lawsuit arises out of the tortious and illegal actions of Defendants, who not only breached their contract with Plaintiff, but also lied to obtain money from Plaintiff and then stole it. In the aftermath of this illicit conduct, Defendants have continued to lie to Plaintiff, and have made it clear they have no intention of returning Plaintiff's money. Defendants' actions have caused substantial harm to Plaintiff while Plaintiff has just sought to get its money back, as rightfully required by law.

## PARTIES

2. Plaintiff JET-I is and at all times mentioned herein was a Nevada corporation with its principal place of business located in Los Angeles, CA.

3. Defendant PROFESSIONAL FLIGHT TRANSPORT, INC. is and at all times mentioned herein was a Florida corporation with its principal place of business located in Ft. Lauderdale, Florida. Defendant PROFESSIONAL FLIGHT TRANSPORT, INC.'s place of business is 1815 NW 51st Pl., Fort Lauderdale, Florida 33309. Defendant operates its business under the fictitious name of Windsor Jet Management (hereafter, "Defendant Windsor").

4. Defendant IGNACIO A. MARTINEZ ("Martinez") is the owner and manager of Defendant Windsor, and on information and belief is a resident and citizen of Florida.

5. Defendant JUAN MOSQUERA ("Mosquera") is a charter sales employee of Defendant Windsor and on information and belief is a resident and citizen of Florida.

6. Defendant ENA ARIAS ("Arias") is the Chief Financial Officer and employee of Defendant Windsor and on information and belief is a resident and citizen of Florida.

7. Defendant KAREN BAILANO ("Bailano") is an employee of Defendant Windsor and on information and belief is a resident and citizen of Florida.

8. Plaintiff is unaware to the true names and capacities whether individual, corporate, associate, representative or otherwise, of Defendants named herein as Does 1 through 20,

inclusive, and therefore sue defendants by such fictitious names. Plaintiff will seek leave of this Court to amend this complaint to allege their true names and capacities once the same has been ascertained. Plaintiff is informed and believes, and based upon such information and belief allege, that each of the fictitiously named Defendants are responsible in some manner, way, or form and to some extent for acts, events and occurrences hereinafter alleged, and that Plaintiff's damages as hereinafter alleged were proximately caused by their conduct. Wherever appearing in this complaint, every reference to "Defendants" is intended and shall be a reference to all Defendants in this action including all Doe identified defendants.

## JURISDICTION AND VENUE

9.  Plaintiff brings this complaint under federal diversity jurisdiction pursuant to 28 U.S.C.§ 1332(a) as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, excluding interest and costs. Specifically, no Defendant is a citizen of the same state as Plaintiff. JET-I, on the one hand, and Defendants Windsor, Martinez, Mosquera, Arias, and Bailano, on the other, are citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

10. Venue is proper in this judicial district under 28 U.S.C. § 1391 as Defendants entered into a contract with Plaintiff in this district, and a substantial part of the events giving rise to the claims asserted herein occurred in this district and the harm was caused to Plaintiff in this district. Venue is also proper in this district as a corporation is deemed to reside in any judicial district where its contacts would be sufficient to subject it to personal jurisdiction at the time the action is commenced.

## FACTUAL ALLEGATIONS

11. Plaintiff JET-I is an air charter broker and is in the profession of arranging chartered flights for individuals, entities, celebrities and the like. Plaintiff arranges hundreds of chartered flights per year, and is well known throughout the industry for its reputation as a reliable air charter broker and its ability to successfully charter flights that other air charter brokers cannot charter for their clients.

COMPLAINT FOR DAMAGES AND JURY DEMAND

12.   According to the National Business Aviation Association ("NBAA"), the trade association for private and corporate jet owners, "[a]n air charter broker matches a consumer's travel needs with available air charter provided by carriers licensed under Part 135 of the Federal Aviation Regulations (FARs)."

13.   As one of the benefits for NBAA members, the NBAA operates a service called "Air Mail" wherein air charter brokers send their particular needs for flights to the Part 135 Operators through a system-wide email.

14.   Part 135 refers to Part 135 of Title 14 of the Code of Federal Regulations and applies to turbojet engine powered aircraft with 1-30 seats, non-transport category turbo-propeller powered aircraft with 10-19 seats, and transport category turbo props with 20-30 seats.

15.   Defendant Windsor is a member of the NBAA and holds a certificate as a Part 135 Operator (Air Operator Certificate # XPTA128K) and is in the profession of providing airplanes for use on chartered flights. As a Part 135 Operator, Defendant is subject to all Part 135 regulations.

16.   Defendant Windsor operates six private jet airplanes and offers chartered flights domestically and internationally, and, in fact, regularly charters flights to California.

17.   Defendants, each and every one of them, had previously worked with and/or provided jet airplanes to Plaintiff for chartered flight use and were at all times aware of Plaintiff's business, its clientele, and its dealings throughout the charter jet industry.

18.   On May 31, 2018, Plaintiff was contacted by a client who requested a chartered flight from Miami, Florida, to Van Nuys, California. That same day, on May 31, 2018, Plaintiff sent out, through NBAA's Air Mail service, the need for a flight that could take its clients from Miami to Van Nuys, as requested by its clients.

19.   Defendant Windsor, through Defendant Mosquera, contacted Plaintiff's CEO, Ms. Rana Crostic, to inform her that they had a private jet available for the flight that Plaintiff was requesting.

///

COMPLAINT FOR DAMAGES AND JURY DEMAND

20.    A Quote For Aircraft Services (hereafter, "Agreement") for Plaintiff's requested flight was submitted by Defendants to Ms. Crostic, in the amount of thirty-thousand, three hundred and eighty dollars ($30,380.00) on May 31, 2018.

21.    Pursuant to the Agreement, as well as numerous correspondences, Defendants unequivocally made representations that they would provide the aircraft for Plaintiff's requested flight.

22.    Moreover, the Agreement further stated and represented that, in the event of a mechanical failure with the original jet airplane, that Defendants would ensure that a replacement jet airplane be provided for Plaintiff's flight from Miami to Van Nuys.

23.    Plaintiff reasonably relied on the representations by Defendants since Plaintiff had worked with Defendants in the past and had no reason to believe that Defendants would breach their contract and leave Plaintiff's client stranded at the airport without a flight.

24.    Plaintiff's reasonable reliance on the representations made by Defendants were to her detriment.

25.    On information and belief, Defendants, at no relevant time, had the intention of actually providing a private jet airplane for the flight pursuant to the parties' Agreement.

26.    In fact, Defendants knew, or should have known, or had reason to believe that the aircraft that was to be provided for Plaintiff was unavailable for the flight.

27.    Based on the representations made by Defendants, Ms. Crostic, on behalf of Plaintiff, immediately accepted the offer contained in the Agreement and signed the Agreement on behalf of JET-I, on May 31, 2018.

28.    Payment in the full amount of $30,380.00 was immediately sent by wire transfer from Plaintiff to Defendant Windsor that same day, on May 31, 2018.  Defendants acknowledged that the wire transfer had been received.

29.    Several hours later, as Plaintiff's clients were at the airport, Defendants contacted Plaintiff to inform that the private jet that was to be used for the flight from Miami to Van Nuys had allegedly suffered a mechanical failure prior to the flight, and as a result, Defendant was unable to complete the chartered flight as set forth in the Agreement.

30.   Plaintiff inquired about the replacement jet airplane which was to be provided according to the Agreement in the event that the original jet was unavailable. Defendants stated that they were unable to provide a replacement jet airplane, and in fact did fail to provide a replacement jet airplane for the flight, despite Defendants' obligation under the Agreement.

31.   Consequently, Defendant Windsor was in complete and material breach of the Agreement made with Plaintiff.

32.   Defendant Windsor's failure to perform, and failure to provide a substitute aircraft, caused significant financial harm to Plaintiff, as well as to its clients.

33.   The entire Agreement between the parties centered on Defendant Windsor providing the private jet for the May 31, 2018 flight from Miami to Van Nuys.

34.   Defendant Windsor further failed to remedy or cure the breach by failing to provide a replacement jet airplane for the May 31, 2018 flight.

35.   Defendants caused significant damage to Plaintiff since Plaintiff was unable to provide a private jet for its clients and had to obtain alternative means of transportation for its clients at a significant increase in cost.

36.   Defendants further caused harm to Plaintiff's reputation and its business goodwill.  As a result of Defendants' actions, Plaintiff has suffered a loss of a valuable business relationship with its client, and the resulting consequence of having word spread that it was unable to complete a chartered flight.

37.   Defendants' actions after the breach of the Agreement were not typical of a charter flight operating company with a simple mechanical failure.

38.   Within the charter jet airplane industry, refunds after mechanical failures are customarily made within 24 hours.

39.   Furthermore, pursuant to 14 CFR § 380.32(k), if a chartered flight is cancelled, a refund must be made within 14 days of the cancellation.

40.   However, to date, Defendants have failed to refund any of the $30,380 tendered to them, despite their repeated reassurances that such a refund was imminent.

41.  Following the breach of the Agreement, Plaintiff has repeatedly reached out to Defendants to seek the full refund that Plaintiff is rightfully due.

42.  Instead of remedying the situation of the breach of contract, Defendants have instead lied and delayed payment to Plaintiff, once again to Plaintiff's detriment.

43.  Beginning on June 1, 2018, Plaintiff called Defendants and was told that the wire would immediately be sent to refund Plaintiff for the full amount of $30,380.00 for the cancelled flight. However, no such wire was sent that day or any other day.

44.  The following day, on June 2, 2018, Plaintiff spoke with Defendant Windsor's charter manager, Defendant Bailano, who also made assurances that the payment would be sent by wire transfer. The payment was not sent.

45.  On June 5, 2018, Defendant Windsor's CFO, Defendant Arias, stated that the wire would go out that same day, or no later than the next day, June 6, 2018.

46.  As the CFO of Defendant Windsor, Defendant Arias would be aware of all the financial matters relating to Defendant Windsor's ability to pay and whether the payments would be made or not.

47.  Defendant Arias, acting on behalf of Defendant Windsor, knowingly made a false statement to Plaintiff that the payment would be sent by wire transfer by June 6, 2018.

48.  The payment was not sent by June 6, 2018.

49.  In the alternative, Defendant Arias, acting on behalf of Defendant Windsor, should have known that she was making a false statement when she told Plaintiff that the payment would be sent by wire transfer by June 6, 2018.

50.  Plaintiff relied on the representations made by Defendants Bailano and Arias, to Plaintiff's detriment.

51.  No wire transfer was received by Plaintiff by June 6, 2018. Even worse, it was apparent that Defendants were no longer accepting phone calls from Plaintiff, or responding to Plaintiff's emails.

///

52. On Friday, June 8, 2018, Ms. Crostic, was finally able to reach Defendant Arias, who once again informed Ms. Crostic that Windsor would refund the money no later than Wednesday, June 13, 2018.

53. Plaintiff was also told by Defendant Arias on June 8, 2018, that the owner of Defendant Windsor, Defendant Martinez, would personally guarantee that Plaintiff would be refunded the money.

54. Plaintiff telephoned Defendant Arias on June 13, 2018 to ensure the payment would be made as planned.  Defendant Arias informed Plaintiff that Defendant Windsor could not make the payment on June 13, 2018, but that it was scheduled to be made on Thursday, June 14, 2018 in the morning.

55. On Thursday, June 14, 2018, once again, Defendant Windsor had not wired any money to Plaintiff.

56. Plaintiff submitted multiple demands to Defendants requesting the immediate return of the $30,380, first by email and then, through Plaintiff's counsel, by Federal Express Overnight delivery which was received and signed for by Defendants on Friday, June 15, 2018.

57. On information and belief, the money that was sent by Plaintiff to Defendant Windsor was used by Defendant to Windsor to pay the salaries of Defendants Martinez, Mosquera, Arias, and Bailano, as well as any other employees.

58. Throughout the week of June 18, 2018 – June 22, 2018, Plaintiff's counsel made repeated attempts to telephone Defendants in an attempt to speak with Defendants about whether the money would be returned.  Plaintiff's counsel stated Plaintiff's willingness to accept a payment plan in the event that the money was not readily available to Defendants. However, despite the several phone call attempts, Defendants refused to speak with Plaintiff's counsel, and never returned his phone calls. Defendants have refused to contact Plaintiff, or Plaintiff's counsel, at any time from June 14, 2018, until now.

59. It has become evident that Defendants do not intend on returning Plaintiff's money.

60. Despite the fact that Defendants are refusing to return Plaintiff's money, Defendants are still sending out solicitations for charter flights through the Air Mail service. Defendants have functioning jet airplanes and are actively seeking to provide chartered flights.

**FIRST CAUSE OF ACTION**

**(BREACH OF CONTRACT – AGAINST DEFENDANT WINDSOR)**

61. Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

62. A valid contract was formed as soon as Plaintiff signed into the Agreement with Defendant Windsor on May 31, 2018.

63. Plaintiff did all of the significant things that the contract required it to do, namely to make a payment in the amount of $30,380.00 for use of the jet airplane on May 31, 2018 for a flight from Miami to Van Nuys.

64. Defendant Windsor failed to do what the contract required it to do. Specifically, Defendant Windsor committed a material breach by failing to provide a jet airplane for the flight that was stated in the Agreement and also failed to provide a replacement jet airplane when the original plane allegedly suffered a mechanical problem.

65. Defendant Windsor's failure to perform, and failure to provide a substitute aircraft, caused significant financial harm to Plaintiff, and as a result, to its clients.

66. Defendant's breach of contract was the substantial factor in causing Plaintiff's harm.

**SECOND CAUSE OF ACTION**

**(INTENTIONAL MISREPRESENTATION – AGAINST ALL DEFENDANTS)**

67. Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

68. Defendants repeatedly represented to Plaintiff that a fact was true. Specifically, that Defendants would provide a jet airplane for the flight from Miami to Van Nuys on May 31, 2018, and that in the case of a mechanical failure, a replacement jet airplane would be provided.

69. Defendants' representations were in fact false.

COMPLAINT FOR DAMAGES AND JURY DEMAND

70.   Defendants knew that the representation was false when they made it, or they made the representations recklessly and without regard for its truth.

71.   Defendants intended that Plaintiff would rely on the representations that a jet airplane or replacement jet airplane would be provided.

72.   Plaintiff reasonably relied on Defendants' representations.

73.   Plaintiff was harmed as a result of Defendants' actions.

## THIRD CAUSE OF ACTION

### (NEGLIGENT MISREPRESENTATION – AGAINST ALL DEFENDANTS)

74.   Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

75.   Defendants repeatedly represented to Plaintiff that a fact was true and that a jet airplane and even a replacement jet airplane were available for the flight from Miami to Van Nuys.

76.   Defendants' representation were not true.

77.   Although Defendants may have honestly believed that the representations were true, Defendants had no reasonable grounds for believing the representations were true when they made it.

78.   Defendants intended that Plaintiff rely on these representations.

79.   Plaintiff reasonably relied on Defendants' representations.

80.   Plaintiff was harmed as a result of Defendants' actions.

81.   Plaintiff's reliance on Defendants' representation was a substantial factor in causing its harm.

## FOURTH CAUSE OF ACTION

### (CONSPIRACY – AGAINST ALL DEFENDANTS)

82.   Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

///

83. Defendants, each and every one of them, were aware that they were planning to obtain the $30,380.00 from Plaintiff without the intention of providing a jet airplane or a replacement jet airplane for the flight from Miami to Van Nuys.

84. Defendants, each and every one of them, agreed with each other and intended that the wrongful act of taking Plaintiff's money without providing a jet airplane or replacement jet airplane for the flight from Miami to Van Nuys be committed.

## FIFTH CAUSE OF ACTION

### (UNJUST ENRICHMENT – AGAINST ALL DEFENDANTS)

85. Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

86. Defendants, each and every one of them, received the benefit of the $30,380.00 that was given to them by Plaintiff for the chartered flight that was scheduled to take place on May 31, 2018.

87. Defendants did not provide any products, services, or anything else in return for Plaintiff's payment.

88. Defendants have refused to return any of the $30,380.00 to Plaintiff.

89. Plaintiff has incurred a significant financial loss as a result of Defendants' refusal to return the money to Plaintiff.

## SIXTH CAUSE OF ACTION

### (UNFAIR COMPETITION- CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200 – AGAINST DEFENDANT WINDSOR)

90. Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

91. Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice.

92. Section 17200 specifically prohibits any "*unlawful* . . . business act or practice."

93. Defendants have violated §17200's prohibition against engaging in an unlawful act or practice by refusing to refund to Plaintiff the amount owed.

COMPLAINT FOR DAMAGES AND JURY DEMAND

94.  Defendants' refusal to refund Plaintiff's money violates 14 CFR § 380.32(k), which requires that in the event of a cancellation of a chartered flight the money must be refunded within 14 days.

95.  Defendants' conduct caused and continues to cause substantial injury to Plaintiff. Plaintiff has suffered injury in fact and lost money as a result of Defendants' unlawful and unfair conduct.

96.  Additionally, pursuant to California Business & Professions Code §17203, Plaintiff seeks an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to return the full amount of money improperly collected back to Plaintiff.

## SEVENTH CAUSE OF ACTION

### (FALSE PROMISE – AGAINST ALL DEFENDANTS)

97.  Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

98.  Defendants promised, through the Agreement that they made with Plaintiff, to have a jet airplane available for the flight from Miami to Van Nuys on May 31, 2018.  If the jet airplane was nonfunctional, Defendants had also promised to provide a replacement jet airplane to ensure the flight would continue as planned.

99.  Defendants did not intend to fulfill the promise at the time it was made.

100.  Defendants instead intended that Plaintiff would rely on the promise, and Plaintiff did, in fact, reasonably rely on the promise by sending payment, via wire transfer, in the amount of $30,380.00 to Defendants.

101.  Defendants did not fulfill either of their promises, and failed to provide a jet airplane or a replacement jet airplane for Plaintiff to provide to its client for the flight from Miami to Van Nuys.

102.  Plaintiff suffered damages as a result of its reliance on Defendants' false promise.

///

## EIGHTH CAUSE OF ACTION

### (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS – AGAINST ALL DEFENDANTS)

103. Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

104. Plaintiff and its clients were in an economic relationship that probably would have resulted in an economic benefit to Plaintiff.

105. Defendants, who had all worked with Plaintiff in the past and were aware of its business, its clientele, and its dealings throughout the charter jet industry, knew of the relationship between Plaintiff and its clients.

106. Defendant engaged in tortious conduct by failing to provide a jet airplane for Plaintiff's use and by refusing to refund the money to Plaintiff.

107. By engaging in this conduct, Defendants knew that disruption of the relationship was certain or substantially certain to occur.

108. The relationship between Plaintiff and its client was disrupted.

109. Plaintiff was harmed as a result of Defendants' actions.

110. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

## NINTH CAUSE OF ACTION

### (CONVERSION – AGAINST DEFENDANT WINDSOR)

111. Plaintiff repeats and re-alleges each and every allegation contained above as if set forth herein.

112. Plaintiff owned and had a right to possess the $30,380.00 that was transferred by wire to Defendant Windsor on May 31, 2018

113. Defendant intentionally and substantially interfered with Plaintiff's property by refusing to return the $30,380.00 after Plaintiff demanded its return.

114. Plaintiff did not consent to Defendant's refusal to return the $30,380.00, and in fact repeatedly demanded its return;

115. Plaintiff was harmed as a result of Defendant's refusal to return the $30,380.

COMPLAINT FOR DAMAGES AND JURY DEMAND

116.   Defendant's conduct was a substantial factor in causing Plaintiff's harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as set forth below:

I.   Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein, in an amount exceeding $75,000;

II.   Pre-judgment and post-judgment, interest on such monetary relief;

III.   Equitable relief in the form of an injunction prohibiting the illicit conduct described herein;

IV.   The costs of bringing this suit, including reasonable attorneys' fees; and

V.   Any additional relief the Court deems fit.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial on any and all claims so triable.

Dated: June 26, 2018

Respectfully submitted,

/s/ Naveed Mahboobian
Naveed Mahboobian (SBN 279464)
Law Offices of Naveed Mahboobian
2530 Wilshire Blvd., Suite 325
Santa Monica, CA 90403
Telephone: (424) 272-1005
naveed@nmlawcorp.com

COMPLAINT FOR DAMAGES AND JURY DEMAND